# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF CONNECTICUT

JANE DOE,

       Plaintiff,

v.

                                                **CIV. NO.:**

BETA THETA PI FRATERNITY;
MU EPSILON CHAPTER OF BETA
THETA PI FRATERNITY;
THE RAIMOND DUY BAIRD MEMORIAL
ASSOCIATION, INC., and
WESLEYAN UNIVERSITY,

       Defendants.

## <u>COMPLAINT AND JURY DEMAND</u>

## INTRODUCTION

1.     Jane Doe was locked in a room and raped at the chapter house ("Beta House") of the Beta Theta Pi Fraternity, Mu Epsilon Chapter ("Beta" and "Mu Epsilon," respectively, and "Fraternity Defendants," collectively) on the night of October 30-31, 2010.  Her assailant pled guilty to assault and unlawful restraint and is presently serving a 15 month sentence at Osborn Correctional Institution in Somers, Connecticut.

2.     Beta House was qualified by Wesleyan University ("Wesleyan") as Program Housing, allowing students required to live on campus to reside in this facility.  Beta House has a long-documented history of dangerous misconduct, student injuries and numerous sexual assaults of women, resulting in Beta and Mu Epsilon losing recognition from Wesleyan as a student organization and gaining the reputation in the Wesleyan community as the "Rape Factory."

3.      On March 5, 2010, Wesleyan officials sent a warning to all Wesleyan students instructing them to stay away from Beta House because it was dangerous and Wesleyan could not ensure students' safety on the premises.  This followed numerous incidents of student injury and hospitalizations.

4.      Fraternity Defendants refused to make safety changes requested by Wesleyan, including refusing to grant Wesleyan Public Safety Officers access of right to the property.

5.      Jane Doe began attending Wesleyan in fall 2010.  Wesleyan and Fraternity Defendants failed to provide her or her parents with any warning, other safety information, or precautions regarding Beta House and events at this location.  Jane Doe was entirely unaware of the risks to women attending student events at the "Rape Factory."  She attended the Halloween party and was raped; another female student also reported being raped at Beta House that same weekend.

6.      On Sunday, October 31, 2010, the Resident Assistant at Jane Doe's dormitory, a Wesleyan employee, was notified of the rape.  The Resident Assistant did not notify the police, campus safety, or the administration.

7.      Because all Wesleyan student health services were closed on Sunday, October 31, Jane Doe was forced to wait until Monday, November 1, to receive health services and report the rape.  When she was finally able to seek treatment and report the rape, Wesleyan advised that she could go to the hospital, but offered neither transportation nor accompaniment.  Wesleyan did not contact its rape counselor, who herself was a sophomore student volunteer.  Wesleyan did not offer any services or other academic help to Jane Doe, not advising or even allowing her lessen her course load or withdraw from classes without penalty.

8.      After these rapes, Wesleyan again warned the campus community about the risks of attending events at Beta House, and prohibited Wesleyan students from living at Beta House or using it for social and academic events.  This spurred campus-wide "Free Beta" protests and rallies organized by members of Beta including Beta House residents.  Through no fault of her own, Jane Doe's identity had become known to certain Beta and Mu Epsilon members.

9.      Crowds of "Free Beta" protesters organized rallies and/or chanted outside Jane Doe's dormitory and in university spaces when she was present.  Jane Doe secluded herself, hiding in her room, missing classes and meals, and suffering further injury and harm.  Jane Doe and her parents requested additional security at her dormitory and academic buildings, but Wesleyan refused those requests, even though the assailant was not arrested until more than two months after the rape.  Wesleyan did nothing to prevent, and was deliberately indifferent to, the harm caused to Jane Doe by the rape and outrageous sexual harassment and intimidation that followed her everywhere on campus.

10.     Jane Doe was denied the opportunity to withdraw from her classes without penalty, and forced to take medical leave from Wesleyan and her education.  She continued counseling for her substantial psychological injuries, and, ultimately, transferred to a different university in a different state.  This action follows.

## JURISDICTION

11.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C § 1331(a)(1) because Plaintiff and Defendants are citizens of different states and the amount in controversy exceeds $75,000.

12.     This Court also has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because this litigation involves matters of federal law including claims made under the Education Amendments of 1972 (Title IX), 20 U.S.C. § 1681 *et seq*.

13.     This Court also has jurisdiction over the State law claims pursuant to 28 U.S.C. § 1367.

14.     Wesleyan and Beta House are located in Connecticut, and the great majority of relevant facts occurred in Connecticut, so venue in this Court is proper.

## PARTIES

15.     Plaintiff Jane Doe is a resident of the State of Maryland, and at all relevant times herein was a student at Wesleyan.

16.     Defendant Beta is an Ohio not-for-profit corporation.  Beta has regularly transacted business in the State of Connecticut, directly and through its chapters, including Defendant Mu Epsilon, and through its active alumni members and associations.

17.     Defendant Mu Epsilon is an unincorporated association and agent of Defendant Beta operating in Connecticut.  Defendant Mu Epsilon is chartered, governed, managed, and controlled by Defendant Beta.  Defendant Beta has the right to exercise control over the activities, assets, policies, and members of Mu Epsilon.

18.     Defendant Raimond Duy Baird Memorial Association Incorporated ("Baird") is a corporation organized and operated under the laws of the State of Connecticut, with its business address in Middletown, Connecticut.  Defendant Baird is the owner and landlord of Beta House, and manages Beta House for its and Fraternity Defendants' mutual benefit.  Fraternity Defendants and Baird have been affiliated for more than 100 years, with Baird having donated Beta House to Defendant Beta.

4

19.     Defendant Wesleyan is a private secondary educational institution located in Middletown, Connecticut.  Wesleyan is organized and operated under the laws of the State of Connecticut and is a recipient of federal funds within the meaning of 20 U.S.C. § 1681.

## GENERAL ALLEGATIONS

20.     Beta House is situated immediately adjacent to Wesleyan's campus in an area predominantly comprised of student housing and academic buildings.

21.     The 2010 rape of Jane Doe is not the first instance of dangerous, illegal misconduct at Beta House.  Beta House, its residents, and members of Fraternity Defendants have a long-documented history of dangerous misconduct at this location including, upon information and belief, numerous sexual assaults of women and other circumstances resulting in injury to and hospitalization of students.  In 2005, that misconduct, risk, and repeated failure to comply with Wesleyan rules caused Wesleyan to revoke recognition of Fraternity Defendants as a student group.  That recognition has never been regained, although Beta House is once again Program Housing.

22.     Fraternity Defendants' misconduct was so pervasive that Beta House earned a reputation on Wesleyan's campus as the "Rape Factory."

23.     Wesleyan continued to qualify Beta House as Program Housing, expressly allowing Wesleyan's student-members of Beta to live in the premises without the necessity of obtaining a waiver of university rules requiring students to reside on campus.

24.     As Program Housing, Baird and Fraternity Defendants were able to reap significant rental income, membership dues, property appreciation, and other revenue and value from students.  Beta House was a site of regular student, social, and academic events, and the injuries to women and others continued.

25.     The fact that all Defendants presented Beta House to the public as Program Housing, and allowed Beta House to be so presented, created the appearance that Beta House was subject to the same rules, regulations, and student-protective provisions as other student housing.

26.     In Spring 2010, there were a number of rapes reported by women attending Wesleyan, some of which, upon information and belief, occurred at Beta House.  Wesleyan officials also knew of rapes at the fraternity houses of Delta Kappa Epsilon the Eclectic Society.

27.     On March 5, 2010, Wesleyan's Dean of Students, Rick Culliton, and Vice President for Student Affairs, Mike Whaley, warned all Wesleyan students in writing to stay away from the Beta House because it was dangerous and Wesleyan could not ensure students' safety on the premises.  Culliton and Whaley's email was based on actual knowledge of the injuries to students and allegations of rape at Beta House.

28.     Wesleyan's warning followed a refusal by Fraternity Defendants and Baird to implement safety procedures required of all Program Housing, including allowing access of right to the property by Wesleyan Public Safety Officers.

29.     Wesleyan tried for approximately one year to obtain such safety concessions from Fraternity Defendants and Baird, but these Defendants refused to make their activities and the property safe.

30.     In justifying its warning to students, Wesleyan President, Michael Roth, stated that Wesleyan wanted "people to know, because parents don't seem to know, that Public Safety does not have access to Beta."

31.     Culliton, Whaley, and Roth – all of whom were Wesleyan employees at the time – had the authority to take action to protect Jane Doe and other students from the discrimination, harassment, sexual assault, and rape threats at Beta House.

32.     Fraternity Defendants and Baird never acceded to Wesleyan's requests but Wesleyan took no further action and continued to allow Beta House to be Program Housing.

33.     Jane Doe began as a student at Wesleyan in Fall 2010.

34.     At the time Jane Doe began her studies at Wesleyan, Fraternity Defendants had made no material change in policies, conduct, or other circumstances since the March warning that would make Beta House safe for Wesleyan students, particularly women.

35.     Neither Wesleyan nor the Fraternity Defendants provided any warnings or safety information of any kind to Jane Doe or her parents concerning Beta House and Fraternity Defendants.  Jane Doe was entirely unaware of the risks to women attending events at the "Rape Factory" and/or the very location declared dangerous by Wesleyan.

36.     In Fall 2010, Beta House still housed students, including much of the Wesleyan lacrosse team.  On the night of October 30-31, 2010, Jane Doe was a social invitee at a Halloween party for students at Beta House.  Jane Doe was locked in a room and raped by a guest of a Beta member.  During the same weekend, another female student reported being raped at Beta House.

37.     Wesleyan's rules, including its Code of Non-Academic Conduct, specifically prohibit any and all sexual discrimination, sexual harassment, and sexual assault.  These policies specifically recognize Wesleyan's interest, ability, and role to curb this abhorrent behavior.

38.     Wesleyan's Community Standards and Residential Regulations specifically state that the host of a social event will be held liable for harm caused by their guests.  "When

residents host a gathering, they will be held accountable for the actions of their guests.  If guest activity causes any harm to persons or property, both the responsible person(s) and the hosts may be held financially responsible." See Community Standards and Residential Regulations, Social Events. The Fraternity Defendants were the hosts of the event at which Jane was raped.

39.     In its policy on sexual harassment, Wesleyan expressly assumed certain duties including: "In cases where sexual harassment is alleged, the University has a duty to act promptly, so as to assure that if such harassment is, in fact, occurring or has occurred, the problem is dealt with and further harm is prevented." See Wesleyan's Policy on Discrimination and Harassment, I. Discriminatory Harassment, Sexual Harassment.

40.     All student health services available to Jane Doe were closed on Sunday, October 31, 2010.  Jane Doe was forced to wait until the following Monday to obtain services and report the rape to health services.

41.     Jane Doe was tested for sexually transmitted diseases but no sexual assault kit was made available or prepared.  Wesleyan health services told Jane Doe she could go to the hospital, but offered neither transportation nor accompaniment to the local hospital.

42.     Jane Doe was sent by Wesleyan to a male counselor whose primary practice was in drug abuse counseling and with whom Jane Doe was uncomfortable, but Wesleyan did not contact or otherwise put Jane Doe in touch with its rape counselor or with other, community-based services like the Middlesex County Rape Crisis Center.

43.     Wesleyan did not notify police that a rape had occurred over the weekend and that the rapist might still be on campus.

44.     Before the rape, Jane Doe was an exceptional student, excelling in math, science, and music studies.  After the rape, Jane Doe was traumatized, began missing classes, and her

grades fell significantly. Despite requests by Jane Doe and her parents, Wesleyan did not offer any services or other academic help to Jane Doe, not even advising her to lessen her course load or permit her to withdraw from classes without penalty.

45.     About two weeks after the two rapes at Beta House, the Wesleyan Dean sent an email to all Wesleyan students informing them of sexual assaults at Beta House, again recommending they stay away from Beta House because their safety could not be ensured. That email stated:

> Over the past week we have received reports of sexual assaults that have allegedly occurred during recent parties at Beta Theta Pi, 184 High Street. The Middletown Police Department has been made aware of these allegations. We are not able to share further details about the reported incidents at this time.
>
> These recent reports have renewed our concern about illegal and unsafe behavior on Beta's premises, as well as our concern for the safety and well-being of Wesleyan students living at the residence or visiting the house. We remind all members of the community that this privately-owned house does not have any formal relationship with the University. Further, we advise all Wesleyan students that they should avoid the residence because we cannot establish the safety of the premises.

46.     In early 2011, Wesleyan changed its policies regarding student housing and sent an email to students stating, among other things, that "Wesleyan students will be prohibited from residing in – or using for social activities – houses or property owned, leased or operated by private societies that are not recognized by the University." This terminated Beta House's status as Program Housing.

47.     This email spurred a series of "Free Beta" protests from members of Beta, Fraternity Defendants, and other students that included rallies, chants, and other protests throughout campus.

48.     These protests led to Wesleyan's revocation of the policy. A reconciliation meeting with student protestors and administrators was held at Beta House.

49.     Jane Doe felt targeted and threatened because during the criminal process, her identity had become known to certain Beta members and because the object of the "Free Beta" protests was the policy change caused by the report of her having been raped at Beta House. These "Free Beta" protests sexually harassed and intimidated Jane Doe and, likely, any woman who would report sexual violence.  They also restricted her movement on campus and her access to educational opportunities.

50.     As a result, Jane Doe further secluded herself, hiding in her room, missing classes and meals, and suffering further injury and harm.

51.     Jane Doe and her parents met with Wesleyan's Dean Culliton and requested additional security at her dormitory and academic buildings, but Wesleyan refused.  Despite the request coming from Jane Doe and her parents, Wesleyan claimed increased security would violate Jane Doe's privacy.  Wesleyan did nothing to prevent, and was deliberately indifferent to, the harm, sexual harassment, and sexual discrimination caused to Jane Doe by the "Free Beta" events.

52.     Throughout Jane Doe's dealings with Wesleyan officials after reporting the rape against her, Wesleyan Officials never discussed her Title IX rights or protection needs.  Instead, she was taken from the health center to Dean Melendez to retell her story, then forced to do so again when Dean Melendez failed to offer or provide any appropriate services and instead took her to yet another Wesleyan Administrator, Dean Culliton.

53.     Wesleyan did not offer or provide services to Jane Doe to allow her to continue her education at Wesleyan or to help her overcome the trauma she experienced due to the rape, the pervasive harassment and intimidation caused by the "Free Beta" activities, and her problems attending classes and continuing her education.

54.     Jane Doe took medical leave from Wesleyan and her studies.  Later, she transferred to a different university in a different state.

55.     Wesleyan's handling of this process caused Jane Doe to lose a full year of her education, limited her ability to transfer by failing to notify her of her educational standing until long after most colleges' incoming classes were fully admitted, and made it difficult for her to obtain appropriate housing at another university.  Wesleyan's failure to provide appropriate academic advice and assistance after the rape negatively affected Jane Doe and her academic standing.  Finally, the medical leave option Wesleyan finally acceded to required Jane Doe to explain the leave to potential future universities, and requires her to demonstrate therapy and recovery before she would be allowed to re-enroll at Wesleyan.

56.     Wesleyan's handling of Jane Doe's situation cost her at least one additional year of undergraduate education to make up for the transfer and for units that did not transfer, and Wesleyan refused to refund any of Jane Doe's tuition.

57.     Based in large part on the rape of Jane Doe, the sexual discrimination and harassment of the "Free Beta" protests, and Wesleyan's deliberately indifferent response thereto, Jane Doe's roommate withdrew from Wesleyan.

## COUNT I - Negligence
## Fraternity Defendants

58.     Plaintiff incorporates all preceding paragraphs into this Count by reference as though fully restated herein.

59.     Mu Epsilon exists as a chapter of Beta, chartered and allowed to exist by Beta. Beta retains significant control over Mu Epsilon through Beta's laws and rules, the use of alumni and regional advisors who are supposed to regularly check and report on Mu Epsilon's activities

and whether Mu Epsilon is following Beta's mandates. Beta also allows Mu Epsilon to reside at Beta House, which is owned by Baird and donated to Beta for the use of Mu Epsilon.

60.     Fraternity Defendants owed statutory, common law, and assumed duties to Jane Doe to warn or protect her from the rape that occurred at Beta House.

61.     The Fraternity Defendants hosted the event where Jane was injured by the activities of the Fraternity Defendants' guest. The Fraternity Defendants may be held financially responsible for that harm in accordance with Wesleyan's policies and procedures.

62.     Fraternity Defendants breached those duties and were recklessly indifferent to the rights of Jane Doe and others; their negligent and outrageous conduct included, among other things:

   a.     relying on underage, untrained members to manage Mu Epsilon, its activities, and the enforcement of risk management policies, the Code of Non-Academic Conduct, and Beta House;

   b.     refusing to adequately train Mu Epsilon and chapter members and officers on risk management, alcohol and illegal drug policies, crisis management policies, sexual assault and rape prevention, the Code of Non-Academic Conduct, and other management policies and procedures;

   c.     refusing to provide effective supervision and control over Mu Epsilon members and guests, and activities authorized, directed, and participated in by those members and guests;

   d.     refusing to implement reasonable measures to enforce risk management policies to prevent sexual assault and rape at Beta House and during fraternity activities;

e.      refusing to implement reasonable measures to enforce state laws, the Code of Non-Academic Conduct, fraternity policies, and requests by Wesleyan to make the Beta House and Fraternity Defendants' conduct safer;

f.      refusing to implement reasonable measures to stop dangerous activities which it knew, or should have known, were occurring within Beta House;

g.      refusing to discipline Mu Epsilon members for engaging in activities that created the dangerous conditions at Beta House, implicitly allowing those conditions;

h.      refusing to reasonably train its members in student-housing management, or implement reasonable, safe student-housing management standards and practices under the circumstances;

i.      refusing to change fraternity policies that ensure policies and practices regarding student safety, including safe student-housing management policies and practices, are under the control of undergraduate students who lack experience, who are unaware of the inherent, substantial risk of injury and death from such inadequate policies, and who do not understand the consequences of their failure to implement safer policies and practices;

j.      refusing to support proper risk management, crisis management; sexual assault prevention and education, and house management programs;

k.      threatening the mental health, physical health or safety of any person or persons including sexual assault, drug or alcohol abuse, and other forms of destructive behavior;

l.      failing to respect the health and safety of all human beings;

m.      hosting a social event while refusing to provide appropriate monitors or security throughout the duration of the Halloween party to monitor the activities of both members and guests with the objection of promoting compliance with fraternity rules and policies, Connecticut law, the Code of Non-Academic Conduct, and general safety;

n.      refusing to agree to Wesleyan's standard requirements for Program Housing, including the refusal to allow Wesleyan campus police on-demand access to the premises; and

o.      other outrageous and negligent conduct.

63.     As a direct and proximate result of Fraternity Defendants' negligence and outrageous conduct, Jane Doe sustained and continues to sustain injuries for which she is entitled to be compensated, including but not limited to:

a.      past, present, and future pain and suffering, both physical and emotional;

b.      past, present, and future psychological trauma and impairment;

c.      medical bills and other expenses for past and future treatment related to Defendants' acts;

d.      interference with continuing education and lost educational time;

e.      lost tuition;

f.      impaired educational capacity;

g.      impaired earning capacity; and

h.      punitive damages.

## COUNT II – Premises Liability
**Fraternity Defendants and Raimond Duy Baird Memorial Association, Inc.**

64.     Plaintiff incorporates all preceding paragraphs into this Count by reference as though fully restated herein.

14

65.     Defendant Baird at all relevant times was the owner and landlord for Beta House.

66.     Fraternity Defendants and their members occupied and resided in Beta House. They hosted the social event at which Jane Doe was injured.

67.     Defendant Baird and Fraternity Defendants knew Beta House was dangerous due to misuse of alcohol and other illegal substances and sexual assaults that occurred on the premises.

68.     As the owner of Beta House, Baird owed a duty to social invitees on the property, including Jane Doe, to exercise reasonable care to guard against foreseeable dangers arising from the use of the property.

69.     Fraternity Defendants, as residents and occupants of Beta House, and thereby having a measure of control over the property and the activities therein, owed a duty to social invitees, including Jane Doe, to exercise reasonable care to guard against foreseeable dangers arising from the use of the property.

70.     By their actions and inactions, Baird and Fraternity Defendants knew or had reason to know that it was foreseeable that women visiting the property could be harmed by these known dangers.

71.     Fraternity Defendants and Baird knew or had reason to know of the danger of sexual assaults and rapes at Beta House perpetrated by Beta members or their guests.

72.     Defendant Baird breached that duty and was recklessly indifferent to the rights of Jane Doe; its negligent and outrageous conduct included, among other things:

        a.      permitting the Fraternity Defendants and other occupants of the Beta

        House to hold regular and notorious parties that involved provision of alcoholic

        beverages to minors and inebriates, created an environment that made sexual assault and

15

rape likely, and otherwise violated applicable laws, regulations, and codes so as to create a public nuisance and danger to women;

b.       refusing to take action, including that demanded by Wesleyan, to make the premises safe despite knowledge that sexual assaults, rapes, and other injuries were occurring regularly on the premises;

c.       refusing to require its lessees to comply with applicable laws, regulations, and codes prohibiting the provision of alcohol to minors, underage drinking, sexual assault, rape, and other wrongdoing;

d.       hosting a social event and refusing to take reasonable steps to enforce applicable laws, regulations, and codes prohibiting the provision of alcohol to minors, underage drinking, sexual assault, rape, and other wrongdoing;

e.       refusing to take any action to safeguard the public and invitees from property that had become known as the "Rape Factory;"

f.       refusing to terminate, evict, or otherwise take measures to stop Beta and its members from making use of the property in a manner that posed a foreseeable risk of harm from the activities occurring on the property;

g.       refusing to submit to Wesleyan's requirements for Program Housing including, but not limited to, allowing Wesleyan Public Safety on-demand access to the premises;

h.       failing to warn or otherwise protect social invitees like Jane Doe from foreseeable dangers on the premises; and

i.       other outrageous and negligent conduct.

16

73.    Fraternity Defendants breached that duty and were recklessly indifferent to the rights of Jane Doe and others; their negligent and outrageous conduct included, among other things:

a.    permitting its members to hold on the premises regular and notorious parties that involved provision of alcoholic beverages to minors and inebriates, created an environment that made sexual assault and rape likely and otherwise violated applicable laws, regulations, and codes so as to create a public nuisance;

b.    refusing to take action, despite requests from Wesleyan, to make the premises safe despite knowledge that sexual assaults, rapes, and other injuries were occurring regularly on the premises;

c.    refusing to require its members to comply with applicable laws, regulations, and codes prohibiting the provision of alcohol to minors, underage drinking, sexual assault, rape, and other wrongdoing;

d.    hosting social events and refusing to take reasonable steps to enforce applicable laws, regulations, and codes prohibiting the provision of alcohol to minors, underage drinking, sexual assault, rape, and other wrongdoing;

e.    refusing to take any action to safeguard the public and invitees from property that had become known as the "Rape Factory;"

f.    refusing to terminate, evict, or otherwise take measures to stop its members from making use of the property in a manner that posed a foreseeable risk of harm from the activities occurring on the property;

17

g.      refusing to submit to Wesleyan's requirements for Program Housing including, but not limited to, allowing Wesleyan Public Safety on-demand access to the premises;

h.      failing to warn or otherwise protect social invitees like Jane Doe from foreseeable dangers on the premises; and

i.      other outrageous and negligent conduct.

74.     As a direct and proximate result of Fraternity Defendants and Baird's negligent and outrageous conduct, Jane Doe sustained and continues to sustain injuries for which she is entitled to be compensated, including but not limited to:

a.      past, present, and future pain and suffering, both physical and emotional;

b.      past, present, and future psychological trauma and impairment;

c.      medical bills and other expenses for past and future treatment related to Defendants' acts;

d.      interference with continuing education and lost educational time;

e.      lost tuition;

f.      impaired educational capacity;

g.      impaired earning capacity; and

h.      punitive damages.

**COUNT III - Negligence**
**Wesleyan**

75.     Plaintiff incorporates all preceding paragraphs into this Count by reference as though fully restated herein.

76.     Defendant Wesleyan owed statutory, common law, and assumed duties to Jane Doe to warn, protect her from, or otherwise make reasonably safe for her and other likely student invitees the dangerous environment at its Program Housing, Beta House.

77.     Wesleyan breached these duties and was negligent by, among other things:

a.     failing to warn Jane Doe or her family about the dangers of Beta House, specifically for female students attending events at that location;

b.     refusing to allow the Parents Sexual Safety Committee to post warnings on the general parent list-serve, and refusing to allow that committee to notify parents of the assault, guilty plea, and sentencing;

c.     allowing Beta House to continue to operate as Program Housing when it knew or, in the absence of negligence, should have known, that students invited to events at that location would not be safe without making any meaningful changes to prevent the known dangers;

d.     failing to make meaningful changes to prevent known dangers to women at Beta House or otherwise take necessary and reasonable actions to make it a safe environment for students;

e.     failing to adopt policies and procedures to specifically warn students concerning and protect them against known dangers;

f.     failing to adequately enforce polices to protect students from sexual assault and rape;

g.     failing to discipline Beta, Mu Epsilon or its members;

> h.     failing to terminate or limit the "Free Beta" protests and protect Jane Doe and other female students from the pervasive sexual harassment and intimidation caused by such misconduct;

> i.     failing to discipline the sexual harassers in accordance with the Code of Non-Academic Conduct and rules enacted for the safety of Jane Doe and other women;

> j.     failing to act reasonably under the circumstances; and

> k.     other negligent and deliberately indifferent conduct.

78.     As a direct and proximate result of Wesleyan's negligence, Jane Doe sustained and continues to sustain injuries for which she is entitled to be compensated, including but not limited to:

> a.     past, present, and future pain and suffering, both physical and emotional;

> b.     past, present, and future psychological trauma and impairment;

> c.     medical bills and other expenses for past and future treatment related to Defendants' acts;

> d.     interference with continuing education and lost educational time;

> e.     lost tuition;

> f.     impaired educational capacity; and

> g.     impaired earning capacity.

**COUNT IV**
**Violation of the Educational Amendments of 1972 (Title IX), 20 U.S.C. § 1981 *et seq***
**Wesleyan**

79.     Plaintiff incorporates all preceding paragraphs into this Count by reference as though fully restated herein.

80.     Defendant Wesleyan was on notice of misconduct within Beta House before these events and by its actions and inactions created a climate whereby such misconduct was tolerated, thus encouraging repeated misconduct and proximately causing injury to Jane Doe.

81.     Wesleyan, through its employees and administrators including but not limited to Culliton, Whaley, and Roth, had actual knowledge of the discrimination and harassment, including sexual assaults and rapes, occurring at Beta House.

82.     The persons with this actual knowledge, including Culliton, Whaley, and Roth, had the authority to take corrective action to end the discrimination and harassment.

83.     The discrimination and harassment occurring at Beta House, including sexual assaults and rapes, effectively barred Jane Doe, and others, access to an educational opportunity and benefit.

84.     By its actions before Jane Doe's injuries, Defendant Wesleyan acted with deliberate indifference toward the rights of Jane Doe and other female students to a safe and secure education environment thus materially impairing Jane Doe's ability to pursue her education at Wesleyan in violation of the requirements of Title IX.

85.     Specifically, Defendant Wesleyan violated Title IX by:

   a.      despite knowledge of a need to supervise, discipline, warn, or take other corrective action to prevent the discrimination and harassment, including sexual assault and rape, occurring at Beta House, choosing to take no action to protect Jane Doe;

   b.      allowing Beta House to remain Program Housing, or, alternatively, being deliberately indifferent thereto, despite repeated allegations of sexual assault at the premises and the unique dangers to women caused by the property and the landlords', residents', and members' related conduct, or being deliberately indifferent thereto;

21

c.      refusing to enforce its own policies and requirements for Program Housing, or, alternatively, being deliberately indifferent to the enforcement thereof;

d.      allowing Beta to continue to act on campus despite Wesleyan having terminated their status as a recognized student entity in 2005 because of the danger posed by Beta and the conduct of its residence and members, particularly with respect to women, or, alternatively, being deliberately indifferent thereto;

e.      failing to inform female students that Beta, Mu Epsilon, and Baird were not recognized by Wesleyan and that the danger posed to students and, in particular, women, was the reason they were not recognized, or, alternatively, being deliberately indifferent thereto;

f.      failing to warn incoming female students of the known dangers of sexual assault related to Beta House and events held therein, or, alternatively, being deliberately indifferent thereto;

g.      posting only positive information, and failing to post critical safety information regarding risks, concerning Beta on Wesleyan's website despite knowledge of the dangers of Beta House, including, but not limited to, the fact that Beta House had become known as the "Rape Factory," or, alternatively, being deliberately indifferent thereto;

h.      failing to enforce the Code of Non-Academic Conduct to prevent sexual assault and other misconduct at Beta House, or, alternatively, being deliberately indifferent thereto;

i.      creating a climate that tolerated sexual assault and other misconduct at Beta House, or, alternatively, being deliberately indifferent thereto;

KENNY, O'KEEFE & USSEGLIO, P.C.

CAPITOL PLACE • 21 OAK STREET, SUITE 208 • HARTFORD, CONNECTICUT 06106 • (860) 246-2700 • FACSIMILE (860) 246-6480 • JURIS NO. 420163

j.      failing to take appropriate action against Beta, Mu Epsilon, and others related to Beta House and its members for misconduct occurring before and following the rape of Jane Doe, or, alternatively, being deliberately indifferent thereto; and

k.      through other actions, inactions, and deliberate indifference.

86.     Wesleyan's actions and deliberate indifference subjected Jane Doe, and others, to harassment and discrimination, including sexual assault and rape.

87.     As a direct and proximate result of Wesleyan's actions, inactions, and deliberate indifference, Jane Doe sustained and continues to sustain injuries for which she is entitled to be compensated, including but not limited to:

a.      past, present, and future pain and suffering, both physical and emotional;

b.      past, present, and future psychological trauma and impairment;

c.      medical bills and other expenses for past and future treatment related to Defendants' acts;

d.      impaired educational capacity;

e.      impaired earning capacity;

f.      all equitable relief that the Court deems fair and equitable; and

g.      attorneys' fees.

## COUNT V
### Violation of the Educational Amendments of 1972 (Title IX), 20 U.S.C. § 1981, *et seq.*
### Wesleyan University

88.     Plaintiff incorporates all preceding paragraphs into this Count by reference as though fully restated herein.

89.     By its actions and inactions during and after the rape of Jane Doe, Defendant Wesleyan acted with deliberate indifference to the rights of Jane Doe and other female students

to a safe and secure education environment, thus materially impairing Jane Doe's ability to pursue her education at Wesleyan in violation of the requirements of Title IX.

90.    Defendant Wesleyan's actions, inactions, and deliberate indifference effectively barred Jane Doe access to educational opportunities and benefits.

91.    Further, Defendant Wesleyan's actions, inactions, and deliberate indifference subjected Jane Doe to further discrimination and harassment including, but not limited to, Defendant Wesleyan's inappropriate response to the rape at Beta House and the "Free Beta" protests.

92.    Specifically, Defendant Wesleyan violated Title IX after the rape of Jane Doe by:

    a.    failing to provide adequate health and psychological services to Jane Doe after she was sexually assaulted and raped or, alternatively, being deliberately indifferent thereto;

    b.    failing to provide Jane Doe academic assistance and services after she had been raped, or, alternatively, being deliberately indifferent thereto;

    c.    failing to offer to take or to accompany Jane Doe to a hospital and failing to stress the import of a sexual assault/rape kit and medical treatment or, alternatively, being deliberately indifferent thereto;

    d.    failing to provide, offer, recommend, or coordinate adequate counseling to Jane Doe after she had been raped, or, alternatively, being deliberately indifferent thereto;

    e.    allowing the sexual harassment and discrimination that was the "Free Beta" protests, rallies, and events to occur unchecked after the rape of Jane Doe, including directly outside her dormitory, despite knowledge that this caused Jane Doe to

KENNY, O'KEEFE & USSEGLIO, P.C. · CAPITOL PLACE · 21 OAK STREET, SUITE 208 · HARTFORD, CONNECTICUT 06106 · (860) 246-2700 · (860) 246-6480 · FACSIMILE (860) 246-6480 · JURIS NO. 422163

KENNY, O'KEEFE & USSEGLIO, P.C.

CAPITOL PLACE • 21 OAK STREET, SUITE 208 • HARTFORD, CONNECTICUT 06106 • (860) 246-2700 • FACSIMILE (860) 246-6480 • JURIS NO. 420163

fear for her safety and served to confine her to her room and despite knowledge that Beta

members knew her identity or, alternatively, being deliberately indifferent thereto;

    f.    failing to terminate, restrict, or otherwise limit the "Free Beta" protests or

otherwise prevent the harm they were causing Jane Doe or, alternatively, being

deliberately indifferent thereto;

    g.    refusing Jane Doe's request for additional security for her dormitory and

academic buildings immediately after she had been raped and during the "Free Beta"

rallies and events that caused her to fear for her safety, relive the attack on her, and

essentially confined her to her dormitory room and despite knowledge that Beta members

knew her identity or, alternatively, being deliberately indifferent thereto;

    h.    allowing Jane Doe's movement and access to education and activities to

be restricted through sexual harassment and discrimination or, alternatively, being

deliberately indifferent thereto;

    i.    effectively denying Jane Doe an opportunity to continue to attend

Wesleyan based on the discrimination and harassment she endured at Beta House, and

continued to endure at Wesleyan throughout the remainder of her time there, making

continuing her education at Wesleyan untenable; and

    j.    through other actions, inactions, and deliberate indifference.

93.    Defendant Wesleyan had actual knowledge of the discrimination against Jane Doe

after she had been raped through its employees and administrators including, but not limited to,

Culliton, Whaley, and Roth.

94.    When Jane Doe and her family sought redress from Wesleyan's deliberate indifference by seeking an audience with President Roth, he added to the deliberate indifference by refusing to speak with them.

95.    Wesleyan's personnel with actual knowledge had the authority to take corrective action to protect Jane Doe from continued discrimination and harassment and chose not to do so.

96.    As a direct and proximate result of Wesleyan's actions, inactions, and deliberate indifference, Jane Doe sustained and continues to sustain injuries for which she is entitled to be compensated, including but not limited to:

    a.    past, present, and future pain and suffering, both physical and emotional;

    b.    past, present, and future psychological trauma and impairment;

    c.    medical bills and other expenses for past and future treatment related to Defendants' acts;

    d.    impaired educational capacity;

    e.    impaired earning capacity;

    f.    all equitable relief that the Court deems fair and equitable; and

    g.    attorneys' fees.

## PRAYER FOR RELIEF

Plaintiff demands judgment against Defendants as follows:

a.    compensatory and punitive damages on Count I;

b.    compensatory and punitive damages on Count II;

c.    compensatory damages on Count III;

d.    compensatory damages on Count IV;

e.    compensatory damages on Count V; and

f.    such other and further relief that is just and appropriate under the circumstances.

KENNY, O'KEEFE & USSEGLIO, P.C.

CAPITOL PLACE • 21 OAK STREET, SUITE 208 • HARTFORD, CONNECTICUT 06106 • (860) 246-2700 • FACSIMILE (860) 246-6480 • JURIS NO. 420163

## JURY DEMAND

      Plaintiff demands trial by jury.

Respectfully submitted,

October 5, 2012

**BODE & GRENIER, LLP**

By: _____

DOUGLAS E. FIERBERG
(Admission subject to approval)
JOSHUA D. SHEFFER
(Admission subject to approval)
Bode & Grenier, LLP
1150 Connecticut Avenue, N.W.
Ninth Floor
Washington, D.C.  20036
202-828-4100

**KENNY, O'KEEFE & USSEGLIO, PC**

By: _____

Timothy O'Keefe
ct15005
Kenny, O'Keefe & Usseglio, PC
21 Oak Street, Suite 208
Hartford, CT  06106
860-246-2700

**COUNSEL FOR PLAINTIFF**